[Cite as *State v. Hess*, 2023-Ohio-3658.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-24 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 130 |
| | : | |
| JIMIE A. HESS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 6, 2023

. . . . . . . . . . .

AMY E. BAILEY, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Jimie A. Hess appeals from his convictions on three counts of aggravated possession of drugs. Hess contends the trial court erred by failing to merge his convictions for purposes of sentencing. He further claims his 24-month sentence was excessive and not supported by the record. Because we find no error, the

judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 2} On April 15, 2022, members of the Urbana Police Department executed a search warrant at 333 East Court Street. Upon arriving at the residence, Urbana police officer Robbie Evans was met at the door by Hess. Evans informed Hess he could not re-enter the home at that time. Hess became angry and stated that he had medications in his bedroom, which was located in the basement of the residence.

{¶ 3} During the search of the basement bedroom, officers found prescription medication bottles and mail bearing Hess's name. Officers also located a metal pipe on the nightstand by the bed. In a space described by the police as a "cubby hole," police located a bubbler pipe[1] and a plastic baggy with a white crystal substance which was later determined to be 1.63 grams of methamphetamine.

{¶ 4} On July 6, 2022, Hess was indicted on three counts of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a). A trial was conducted in September 2022. During the trial, the parties stipulated that the metal pipe, the bubbler pipe, and the baggie had contained methamphetamine. A jury convicted Hess on all three offenses. The trial court sentenced Hess to a prison term of 12 months on each of the three convictions. The sentences related to the methamphetamine found in the baggie (Count One) and the bubbler pipe (Count Two) were ordered to be served concurrently, and the sentence for the methamphetamine found in the metal pipe (Count

---

[1] A "bubbler pipe" is a glass pipe filled with a small amount of water to aid filtration and cooling.

Three) was ordered to be served consecutively, for an aggregate sentence of 24 months.

{¶ 5} Hess appeals.

## II. Allied Offenses

{¶ 6} The first assignment of error asserted by Hess states:

THE COURT ERRED WHEN FINDING COUNTS ONE, TWO, AND THREE ARE NOT ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25.

{¶ 7} Hess contends the trial court erred in failing to merge all three offenses of aggravated possession of drugs.

{¶ 8} The Double Jeopardy Clause of the United States Constitution protects against multiple punishments for the same criminal conduct. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. That protection is codified in R.C. 2941.25, which states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such

offenses, and the defendant may be convicted of all of them.

{¶ 9} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three distinct factors: the conduct, the animus, and the import. *Ruff* at paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25.

{¶ 10} Generally, an appellate court applies a de novo standard of review in reviewing a trial court's merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. However, Hess failed to preserve the issue of merger by objecting in the trial court. Therefore, we review the issue for plain error. *State v. Bailey*, Ohio Slip Opinion No. 2022-Ohio-4407, __ N.E.3d __, ¶ 7, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 28. Under the doctrine of plain error, "intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Id.* at ¶ 8. In order to prevail under this doctrine, appellant "must establish that 'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.' (Emphasis added in *Rogers.*)." *Id.*, quoting *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *Rogers* at ¶ 22.

{¶ 11} In the past, this court has stated that the "failure to merge allied offenses of similar import is plain error." (Citations omitted.) *E.g., State v. Rogers*, 2d Dist. Greene No. 2011-CA-57, 2012-Ohio-4451, ¶ 5. However, the Ohio Supreme Court recently discussed the issue of plain error as it applies to Ohio's merger statute and indicated that the failure to merge offenses does not automatically constitute plain error. *See Bailey*. The court noted the following three elements to the plain error doctrine: (1) error, which involves deviation from a legal rule; (2) the error is obvious; and (3) a reasonable probability exists that the error caused prejudice, i.e., the error affected the trial's outcome. *Bailey* at ¶ 8, citing *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22. (Other citations omitted.). The court stated that "[t]he elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 12} In *Bailey*, the Supreme Court stated, "[a]lthough determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Id.* at ¶ 11. The court then focused on whether the error was obvious under the second element of the plain-error test, stating, "[e]ven if we were to assume that the trial court erred by not merging the kidnapping and rape counts, the facts of the case indicate that such an error was not obvious." *Id.* at ¶ 14.

{¶ 13} Because the record in this case demonstrates that all three charges against Hess involved the same drug found on the same date and in the same room, we cannot

say this fact pattern automatically established that the possession offenses were committed separately or with a separate animus. It was entirely possible all the methamphetamine found by the police came from the same source and was purchased at the same time. However, it was also possible that the methamphetamine found by the police in the baggy and the two pipes came from three separate purchases made by Hess. Thus, we cannot say with certainty that the offenses were not committed separately.

{¶ 14} Because we cannot determine whether the offenses were committed separately, we cannot conclude that any error in failing to merge the counts in this case constituted obvious error. As such, the first assignment of error is overruled.

### III. Maximum and Consecutive Sentences

{¶ 15} The second assignment of error asserted by Hess states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN SENTENCING MR. HESS TO TWENTY-FOUR MONTHS IN PRISON

{¶ 16} Hess contends that the trial court erred in sentencing. He claims that a proper application of the seriousness and recidivism factors in R.C. 2929.12 would not have supported his sentence. In particular, he asserts that the record does not establish any of the more serious factors set forth in R.C. 2929.19(B), while the record does demonstrate the existence of less serious factors set forth in R.C. 2929.19(C). Thus, he argues his sentence was excessive and unduly burdensome.

{¶ 17} When reviewing felony sentences, appellate courts must apply the standard

of review set forth in R.C. 2953.08(G). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 18} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Supreme Court of Ohio clarified that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 30. Therefore, when reviewing a sentence imposed based solely on consideration of those statutes, this court may not analyze whether the record supports the sentence because the only issue capable of review is whether the sentence is contrary to law. *State v. Line*, 2d Dist. Miami No. 2021-CA-24, 2022-Ohio-857, ¶ 9, citing *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

{¶ 19} In this case, the trial court expressly stated it had considered the purposes and principles of felony sentencing in R.C. 2929.11 and the sentencing factors in R.C.

2929.12. The court also discussed the reasons why it decided to impose a prison sanction instead of community control sanctions. Furthermore, the sentence for each offense was within the statutory range set forth in R.C. 2929.14(A)(5) (a prison term for a fifth-degree felony "shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months"). Therefore, the sentences imposed by the trial court were not contrary to law.

{¶ 20} Hess also asserts that the 24-month sentence was excessive. That sentence resulted from the imposition of a consecutive sentence for Count Three. Thus, although not expressly argued, Hess appears to take exception to the trial court's order imposing a consecutive sentence.

{¶ 21} The Ohio Supreme Court recently discussed consecutive felony sentencing in *State v. Gwynne*, Ohio Slip Opinion No. 2022-Ohio-4607, __ N.E.3d __, noting that "[w]hen a person is sentenced for having committed multiple offenses, the presumption is that those sentences will be imposed concurrently, not consecutively." *Id.* at ¶ 10. However, the court also noted there are exceptions to this presumption, including the exception under R.C. 2929.14(C)(4). *Id.*

{¶ 22} According to *Gwynne*, before a trial court may impose consecutive sentences, it must make the findings set forth in R.C. 2929.14(C)(4). *Id.* at ¶ 11. Specifically, under the terms of the statute, the trial court must find that (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that at least one of the following is applicable:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 23}** *Gwynne* further held that an appellate court's review of the findings and record "is de novo with the ultimate inquiry being whether it clearly and convincingly finds—in other words, has a firm conviction or belief—that the evidence in the record does not support the consecutive-sentence findings that the trial court made." *Id.* at ¶ 27. The court noted that "the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Id.* at ¶ 28. "The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings. This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* at ¶ 29.

{¶ 24} Following our de novo review of Hess's sentences for the three felony convictions, we conclude that the trial court made the necessary consecutive-sentence findings under R.C. 2929.14(C)(4). Further, there was evidentiary support for the court's finding that Hess's history of criminal conduct demonstrated the consecutive sentences were necessary to protect the public from future crime by him. As reflected in the PSI, Hess had been convicted of assault on a police officer in 2000, of aggravated trafficking in drugs (a fourth-degree felony) in 2003, and of two assaults in 2006. In 2009, he was convicted of menacing and harassment with a bodily substance (a fifth-degree felony). In 2013 and 2014, Hess was convicted of complicity to commit theft. He was convicted of felony possession of heroin in 2017 and possession of a controlled substance in 2021. Additionally, the PSI indicated that Hess had violated his community control sanctions in both 2006 and 2014. Based upon this record, we cannot conclude that the trial court erred in imposing consecutive sentences.

{¶ 25} Because we find no error in sentencing, the second assignment of error is overruled.

## IV. Conclusion

{¶ 26} Both of Hess's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and EPLEY, J., concur.